## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| WILLIAM M. WERNER, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. 18-cv-3190 |
| v. ) | |
| ) | |
| AUTO-OWNERS INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| **Defendant.** ) | |

### OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge:**

The Court conducted a bench trial on October 13, 2021 on the issue of damages to be awarded to Plaintiff William Werner. Taking into account the evidence presented at trial, the Court finds that Defendant Auto-Owners Insurance Company ("Auto-Owners") is liable to Plaintiff in the amount of $3,966.67

### I. Facts

On July 31, 2018, Plaintiff filed a two-count complaint against Defendant. Compl. (d/e 1). Count One of the Complaint alleged Defendant breached its contract with Plaintiff when it refused to pay Plaintiff his insurance claim filed after a fire destroyed real

Page **1** of **12**

estate possessed by Plaintiff and insured by Defendant after the real estate had been judicially sold at a foreclosure auction but before the sale had been confirmed. Id. at pp. 4–5. Count Two alleged Defendant acted unreasonably and vexatiously in violation of 215 ILCS 5/155 when it refused to pay Plaintiff's claim. Id. at pp. 5–8. Plaintiff sought $182,700 in damages on Count One and $109,620 in damages on Count Two, for a total of $292,320. Id. at pp. 5 & 8.

On April 9, 2021, the Court allowed in part and denied in part both Defendant's and Plaintiff's motions for summary judgment. Op. Summ. J. (d/e 41).[1] The Court held that, under Plaintiff's insurance policy and Illinois law, Plaintiff held an insurable interest in Plaintiff's right to possess the real estate after the judicial sale on July 21, 2017 until 30 days after the confirmation of the sale on November 26, 2017. Id. at p. 15–16 ("The Court finds that Auto-Owners had an obligation under the Policy to pay Werner for the value of his insurable interest at the time of the Fire. Werner is entitled to partial summary judgment on the issue of liability for breach of the Policy under Count I of the Complaint."). The Court

---

[1] The detailed undisputed material facts of the case are stated in the Court's Opinion on Summary Judgment. In the interest of brevity, the Court does not repeat them here.

also held that Plaintiff "could only recover the value of the loss to his right to possession of the Residence," so "[a]n issue of fact exists regarding the value of Werner's right to possess the Residence from July 31, 2017, the date of the Fire, until November 26, 2017, 30 days after the October 27, 2017 Confirmation Order." Id.  Lastly, the Court granted Defendant summary judgment as to Count Two of the Complaint, holding that Defendant "took a reasonable legal position on an unsettled issue of law" and therefore "did not act in a vexatious and unreasonable manner." Id. at p. 17.

On October 13, 2021, a bench trial was held before the Court after the parties waived their jury demands.  Pretrial Order (d/e 56) p. 5.  The only issue of fact at trial was the amount of damages to which Plaintiff was entitled under the policy for the value of the loss in Plaintiff's right to possess the real estate from July 21, 2017—the date the real estate was destroyed by the fire—to November 26, 2017—30 days after confirmation of the judicial sale of the property.

At trial, Plaintiff testified that the residence covered by the insurance policy had two bedrooms, one bathroom, and approximately 1,200 square feet of living space and an unfinished

basement.  Unofficial Trial Tr. 6:2–22.  Plaintiff also testified that, while there was a detached garage on his property, the garage was not destroyed or damaged by the fire.  Id. at 7:4–25.  Plaintiff then testified, over Defendant's objection, to Plaintiff's Exhibit 1, which showed that, at the time of Plaintiff's bankruptcy proceeding, Plaintiff had been paying $1,445.58 per month in mortgage payments despite $1,658.79 being due.  Id. at 10:5–11:22 (referencing Pl.'s Ex. 1 at p. 26 & 32.  Plaintiff testified that he also paid approximately $150 per month in the real estate taxes.  Id. at 13:7–8.  Plaintiff testified, over Defendant's objection, that his total payments at the time of the bankruptcy proceeding were approximately $1,800 per month.  Id. at 13:13–14:2.

On cross-examination, Plaintiff again testified that his monthly payments prior to the bankruptcy were around $1,400 per month.  Unofficial Trial Tr. 14:18–21.  Plaintiff went on to state that the bankruptcy was ultimately dismissed because the mortgage and bankruptcy payments were too high for Plaintiff to afford, and that, after the bankruptcy was dismissed, his payments were around $1,468 per month.  Id. at 15:1–22.

Defendant called one expert witness at trial: Kristina Clore, a real estate appraiser. Ms. Clore first testified as to what tools appraisers use to determine the fair market value of rental residential property. Unofficial Trial Tr. 20:17–21. Factors include, according to Ms. Clore, the number of bedrooms and bathrooms in the property, the overall condition, any garage on the property, and other comparable rentals in the region. Id. For the fair market value of a partial month of rent, Ms. Clore stated that she would simply divide the total monthly rent by the typical number of days in a month. Id. at 20:25–21:3.

Ms. Clore then testified to Defendant's Exhibit 1. See Def.'s Ex. 1. Exhibit 1 shows a comparable rent schedule for various single-family homes in Springfield, Illinois which Ms. Clore used to conduct a fair market rental appraisal for Plaintiff's property during the time period between the judicial sale of the real estate and 30 days after the confirmation of the sale. Id.; Unofficial Trial Tr. 22:6–23:21. The comparable rental schedule shows five properties which Ms. Core believed were comparable to Plaintiff's property before Plaintiff's property was destroyed by the fire.

The first property listed in Exhibit 1 is Plaintiff's property before it was destroyed by the fire. Exhibit 1 lists the property as a two-bedroom, one-bathroom house in average condition with 1,200 square feet of living space and no garage. Def.'s Ex. 1 at "Subject." While Plaintiff testified that there was a garage on the property prior to the fire, Plaintiff also stated that the garage was damaged in a tornado before the fire and that he eventually tore the garage down. Unofficial Trial Tr. 7:5–25. Ms. Clore also testified that she relied on a deposition she believed Plaintiff gave in concluding, for appraisal purposes, Plaintiff's property did not have a garage, though no deposition was ever admitted into evidence. Therefore, the Court finds that Ms. Clore properly excluded the garage from her calculation.

The rest of the properties listed are the properties Mr. Clore determined were comparable to Plaintiff's property. Comparable One lists a two-bedroom, two-bathroom house in average-to-good condition with 1,500 square feet of living space and a three-stall detached garage and a fair market rental value of $1,050 per month. Id. at "Comparable No. 1." Comparable Two lists a two-bedroom, one-bathroom house in average condition with 851

Page **6** of **12**

square feet in living space and a one-stall attached garage and a fair market rental value of $945 per month. Id. at "Comparable No. 2." Comparable Three lists a two-bedroom, one-bathroom house in average condition with 1,500 square feet in living space and a two-stall attached garage and a fair market rental value of $1,045 per month. Id. at "Comparable No. 3." Comparable Four lists a two-bedroom, one-and-a-half-bathroom house in average condition with 1,441 square feet of living space and a one-stall attached garage and a fair market rental value of $800 per month. Id. at "Comparable No. 4." Finally, Comparable Five lists a three-bedroom, one-bathroom house in average condition with 840 square feet of living space and a two-stall detached garage and a fair market rental value of $1,025 per month. Id. at "Comparable No. 5."

Ms. Clore testified that she used the above information to determine the amount of damages to which she thought Plaintiff would be entitled under the insurance policy. Ms. Clore first concluded that the estimated fair market rental value of Plaintiff's property was $945 per month. Unofficial Trial Tr. 29:14–15; Def.'s Ex. 1 at "Final Reconciliation of Market Rent." Ms. Clore then

divided the $945 by an average of 30 days per month, to arrive at a rental value of $32 per day.  Unofficial Trial Tr. 29:5–15; Def.'s Ex. 1 at "Comment Addendum."  Finally, Ms. Clore multiplied the $32 per day by the 119 days between July 21, 2017 and November 27, 2017 to arrive at a total value of $3,808.  Unofficial Trial Tr. 30:16–31:6.

Ms. Clore testified that Plaintiff's total damages would be the $3,808 in fair market rental value because "Mr. Werner had a right to possess the property during that amount of time."  Id. at 31:9–10.  Ms. Clore stated that Plaintiff's interest in the right to possess the real estate from July 21, 2017 until November 26, 2017 was the property interest a tenant would have had in the property had the real estate been rental property.  Id. at 31:17–32:10.  Therefore, in Ms. Clore's expert opinion, the value of renting the property would be the same value as Plaintiff's right to temporary possession of the property.  Id.

## II.   Analysis

The Court agrees with Defendant's witness' testimony about the method used to calculate damages but disagrees as to the amount to be awarded.  As the Court held in its Opinion on

3:18-cv-03190-SEM-TSH     # 60     Page 9 of 12

Summary Judgment (d/e 41), from the time of the fire on July 21, 2017 to the confirmation of the judicial sale on November 26, 2017, Plaintiff had "only the limited right to temporary possession of residential real estate until 30 days after confirmation." Op. Summ. J. at p. 15. As Ms. Clore testified, and Plaintiff did not contest, Plaintiff's sole right to temporary possession constituted a leasehold right akin to a rental tenant's rights rather than the fee simple rights afforded to owners of property. Unofficial Trial Tr. 31:17–32:4. The Court finds that awarding damages using the cost of Plaintiff's prior mortgage payments would over-value Plaintiff's insurable interest because Plaintiff's interest in the property was reduced to the sole right of temporary possession after the judicial sale, and because Plaintiff did not make the full payments. See Pl.'s Ex. 1 at p. 32. Therefore, the appropriate amount of damages to be awarded to Plaintiff for the sole right to temporary possession is the fair market rental value of the property.

The Court finds that the value of Plaintiff's right to temporary possession from July 21, 2017 to November 26, 2012 was $3,966.67. Ms. Clore testified to the five comparable properties listed in Defendant's Exhibit 1. Exhibit 1 states that the

Page **9** of **12**

determined fair market rental value of $945 for Plaintiff's real estate was estimated using the $800 to $1,050 range of the rental values of the comparable properties.  Def.'s Ex. 1 at "Final Reconciliation of Market Rent."  The Final Reconciliation of Market Rent section of Exhibit 1 states that Plaintiff's rent value was estimated "towards the upper end but moderated downward due to lack of garage," and that "[t]he final rent of $945 is bracketed by four of the five rent comparables."  Id.

However, the Court finds that the fair market rental value for the property, using the factors to which Ms. Clore testified, is $1,000 per month.  The Court notes that $945 per month is the same fair market rental value as Comparable Two.  Def.'s Ex. 1 at p. 1.  While that property and Plaintiff's are equal in the number of bedrooms and bathrooms, Comparable Two is only 851 square feet while Plaintiff's real estate was 1,200 square feet.  Id.  Comparable One also has the same number of bedrooms and bathrooms as Plaintiff's had, but Comparable One is 1,500 square feet and valued at $1,050 per month.  Id.  Comparable Three also has the same number of bedrooms and bathrooms and is also 1,500 square feet and valued at $1,045 per month.  Id.

Ms. Clore testified that "renters tend to look at features such as bedrooms and bathrooms more so than actual size." Unofficial Trial Tr. 36:11–12.  So where the number of bedrooms and bathrooms are equal, the Court finds that the fair market rental value turns on the comparable square footage of the properties.  Since Comparable Two is approximately 350 square feet less than the 1,200 square feet that Plaintiff's real estate was in size, and Comparables One and Three are approximately 300 square feet larger, the Court finds that an appropriate fair market rental value would be approximately midway between Comparable Two's $945 per month and Comparable One's and Comparable Three's approximately $1,050 per month.  Therefore, the Court finds that the fair market rental value of Plaintiff's property would have been $1,000 per month.

Using the $1,000 monthly amount, the Court finds the following calculation to accurately reflect the amount of damages owed to Plaintiff by Defendant: $1,000 fair rental value per month, divided by an average of 30 days per month, multiplied by 119 days between July 31, 2017 and November 26, 2017, the total time of

Plaintiff's right to temporary possession.  That calculation brings the total amount to be awarded to Plaintiff to $3,966.67.

### III.   Conclusion

**IT IS THEREFORE ORDERED**

(1) The Court awards Plaintiff William Werner $3,966.67 in damages against Defendant Auto-Owners Insurance Company.

(2) The clerk is DIRECTED to enter final judgment in favor of Plaintiff William Werner and against Defendant Auto-Owners Insurance Company in the amount of $3,966.67.

(3) The clerk is DIRECTED to close this case.

**ENTERED:  October 19, 2021.**
**FOR THE COURT:**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**